The defendant has appealed from a judgment awarding damages to the plaintiff for the loss of certain personal property insured against theft as well as other hazards under a policy issued by the defendant. Although one paragraph of the finding is challenged for lack of evidence, the principal claims of the defendant are (1) that the conclusion of the court that the property had been lost as the result of a theft within the meaning of the insurance policy is not supported by the subordinate facts found; (2) that the circumstances of the loss as set forth in the finding fall within an exclusion contained in the policy for losses resulting from "confiscation by order of any government or public authority"; and (3) that the facts found *Page 572 
necessitate a conclusion that the plaintiff had failed to comply with the policy requirements for notice of the claim and submission of a proof of loss.
It appears from the finding that the plaintiff had occupied an apartment on Farmington Avenue in New Britain for about five years prior to September 20, 1973. On that date several New Britain police officers, acting pursuant to a search warrant authorizing the seizure of two pieces[1] of personal property suspected to have been stolen, removed over 2000 items from the plaintiff's apartment, including paintings, antiques, jewelry, rifles, photographic equipment, food and other objects. The plaintiff and the other occupant of the apartment were arrested on charges of larceny. The plaintiff was unable to make bond and he remained in jail until November 15, 1973, when he was released. The charges against the plaintiff and the other occupant of the apartment were nolled or dismissed.
On November 9, 1973, the court ordered the police to return to the plaintiff all but two of the items which had been seized from his apartment. After various efforts were made by the plaintiff to obtain his property, the police returned some of the items in December, 1973, twenty-six of which had been damaged to the extent that the plaintiff's loss for those items exceeded the $5000 limitation of coverage under the policy. A substantial number of items were never found.
The return of the search warrant did not contain an inventory of the numerous items seized as required by General Statutes 54-33c. After many *Page 573 
requests an incomplete inventory listing some of the items taken was given to the plaintiff on June 10, 1975, more than a year and a half after the seizure.
 I
The paragraph of the finding attacked as having been found without evidence states that the plaintiff observed police officers using items of his personal property for their personal use. The paragraph is supported by the plaintiff's testimony that he saw a detective using one of his Japanese mugs to drink coffee and also saw several items of his photographic equipment, his binoculars, his painting and his brass pitchers in the office of another police officer. These observations were made after the plaintiff had been released from jail and after the property had been ordered returned to him. The defendant offered no evidence that the continued retention and use of the property was related to any police investigation.
The trial court concluded that the actions of the police officers in using the plaintiff's property after its return had been ordered indicated an intent to withhold the property within the context of General Statutes 53a-119
and was a theft within the meaning of the policy. Section 53a-119 provides that "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, . he wrongfully takes, obtains or withholds such property from an owner." The policy defined "theft" to mean "any act of stealing or attempt there at, including loss of property from a known place under circumstances when a probability of theft exists." Although the defendant claims otherwise, we construe this policy definition to include the wrongful withholding of property just as such an act is included within the definition of larceny in 53a-119. *Page 574 
The trial court did not find that the original removal of the property from the plaintiff's home, which constituted a wrongful taking because it far exceeded the scope of the search warrant, was accompanied by any larcenous intent. The behavior of the police with respect to the items in their possession after the property was ordered to be returned, as well as their delay in providing any inventory of the property and their failure to return many items taken without adequate explanation, support the finding of an intentional withholding of the property for the purpose of depriving the plaintiff thereof such as to constitute a theft within the meaning of the policy.
 II
The policy exclusion for losses "caused directly or indirectly by: . . . confiscation by order of any government or public authority," upon which the defendant relies, is wholly inapplicable to the situation disclosed by the finding. There is no evidence of any order of "confiscation" as such. Even if the search warrant might be regarded as such an order, it is clear that the removal of all but two of the items taken was not sanctioned by the search warrant. It is equally clear that the retention of the property after the court ordered it to be returned, which is the basis for the finding of theft, directly contravened a governmental order.
 III
The policy required the insured to give "immediate written notice" of any loss to the defendant and also to furnish a sworn proof of loss within sixty days after the loss occurred unless such time was extended in writing by the defendant. The defendant pleaded noncompliance with these provisions as special defenses. The plaintiff's reply to these *Page 575 
defenses claimed waiver and estoppel. The trial court concluded that the plaintiff had complied sufficiently with these requirements and also found that failure of the defendant to make a timely objection to the notice and proof of loss furnished by the plaintiff effectively waived these provisions of the policy as a defense.
Although the property had been removed from his home on September 20, 1973, the date of his arrest, the plaintiff did not discover this fact until November 15, 1973, when he was released from jail. He first notified the defendant of the loss by a letter dated December 3, 1973, more than two weeks afterward. Later in the same month he submitted to the defendant a list of the missing and damaged property as best he could recall it. He also told the defendant that he was attempting to obtain an inventory of the items taken from the New Britain police department but that he was receiving no cooperation. In a letter dated January 7, 1974, the defendant informed the plaintiff that his loss would not be paid because it did not fall within the policy coverage and for other unspecified reasons.
The plaintiff could not have been expected to notify the defendant of his claim before November 15, 1973, when he discovered it after his release from jail. "The weight of authority supports the rule that where it is impossible to give the notice . . . required by the policy, the failure will not bar a recovery if the notice be given within a reasonable time after the impossibility has passed." Haskell v. Eagle Indemnity Co., 108 Conn. 652,656, 144 A. 298 (1929). Although the policy required "immediate" notice, this term has "generally [been] construed as requiring only that notice be given within a reasonable time, under the circumstances of the particular case." West Haven v. United States Fidelity Guaranty Co., 174 Conn. 392, 397, *Page 576 389 A.2d 741 (1978). It appears that the plaintiff made several efforts to retrieve his property from the New Britain police department without success before notifying the defendant of his loss. He would not have been under a duty to notify the defendant until he reasonably should have realized that his property would not be returned. There is nothing to indicate that the damage to the twenty-six items of property which were returned, upon which the award was wholly based, was discovered until the plaintiff received them some time after notice of the loss had been given. There is no obligation to give notice until there are reasonable grounds to believe that a loss covered by the policy has been sustained. Silver v. Indemnity Ins. Co., 137 Conn. 525, 530,79 A.2d 355 (1951); Baker v. Metropolitan Casualty Ins. Co., 118 Conn. 147, 150, 171A. 7 (1934).
In any event, as the trial court concluded, the failure of the defendant to mention any delay in furnishing notice of loss as a ground for its refusal to honor the claim was a waiver of such a defense. "It appears to be well settled by all the later cases on this point that the insurer may, by waiver or estoppel, lose its right to defeat a recovery . . . because of the insured's failure to comply with the policy provisions as to notice of accident or claim or as to the forwarding of suit papers." Frager v. Pennsylvania General Ins. Co.,161 Conn. 472? 486, 289 A.2d 896 (1971). "The conclusion that a party has waived a right is one of fact for the trier . . . Id. It does not appear that any claim that the notice was tardy was raised by the defendant until more than a year after its receipt, when the answer to the complaint containing this special defense was filed. The letter of disclaimer made no mention of this ground. An agent of the defendant testified at the trial that a notice of loss received within thirty *Page 577 
days was regarded as timely. There was sufficient support for the finding of waiver made by the trial court with respect to the timeliness of the notice.
The policy requirement of proof of loss within sixty days was also found to have been waived by virtue of the failure of the defendant to mention it as a ground for disclaimer in the letter of January 7, 1974. The sixty-day period could not have begun to run any earlier than November 15, 1973, when the plaintiff first discovered that his property had been removed from his apartment. There would have been time to correct any deficiencies in the documents which the plaintiff had submitted if they had been pointed out in the defendant's letter of January 7, 1974. Apart from waiver, there is an element of estoppel present where an insurer which should reasonably be aware of some defect in the documents submitted fails to call the matter to the attention of the insured until the time for complying with the policy provision has expired. Cahill v. Royal Ins. Co.,94 Conn. 118, 122-23, 108 A. 544 (1919).
In any event, the disclaimer of liability upon grounds not related to deficiencies in the proofs of loss excused the plaintiff from making any further effort to comply with that provision of the policy. Batchelor v. People's Fire Ins. Co.,40 Conn. 56, 64 (1873). "Presentation of proofs under such circumstances was of no importance to either party, and the law rarely, if ever, requires the observance of an idle formality, especially after the party for whose benefit the original stipulation was made, has rendered conformity thereto unnecessary and practically superfluous." Norwich New York Transportation Co. v. Western Massachusetts Ins. Co., 34 Conn. 561,570 (1868). "The denial by the defendant of all liability in this case . . . was a *Page 578 
notice to the plaintiff that it would not be bound in any event, though formal proofs were furnished." Haskell v. Eagle Indemnity Co., supra, 658.
We agree with the conclusion of the trial court that the defendant could not avail itself of the failure to provide a timely proof of loss as a defense under the circumstances of this case.
 There is no error.
In this Opinion BIELUCH and HALE, Js., concurred.