Lowy, David A., J.
I. INTRODUCTION
This action arises out of the denial of insurance coverage under an “all risks” policy that was procured by the plaintiff, Cortina Realty Trust (“Cortina”), and underwritten by the defendant, Pacific Insurance Company (“Pacific”). The plaintiff alleges that the denial of coverage for water damage to the plaintiffs property, located at 425 Broadway in Saugus, Massachusetts, amounts to a material breach of the express agreement between the parties. The defendant argues that the denial of coverage falls within the exclusionary language of the policy, and that such denial was proper under the circumstances concerning the damage to the plaintiffs property. Before the Court is the defendant’s Motion for Summary Judgment. For the reasons set forth below, after a hearing and review of the summary judgment record, defendant’s motion is ALLOWED.
II. BACKGROUND
The following undisputed facts are taken from the summary judgment record.
The plaintiff, Cortina Realty Trust, is owned and controlled by its trustee, Gerald Breen. Through Cor-tina Realiy Trust, Mr. Breen owns a building at 425 Broadway in Saugus, Massachusetts (“the building” or “425 Broadway”). For over ten years, Cortina Realty Trust has had two tenants in the building. The tenants, Rollerworld and Route 1 Racquet and Fitness Center, are owned by Breen and operate in the building. On or about September 4, 2005, the parties entered into an express written agreement whereby the defendant issued an “all risks” insurance policy for Cortina’s building located at 425 Broadway, Saugus, Massachusetts. The policy contained an exclusion for any damage to the properly “caused by, resulting from, contributed to or aggravated by flood.” Mr. Breen was aware that the policy did not include coverage for damage due to flood.
Throughout the middle of May in 2006, it rained on and off for six consecutive days, and northeast Massachusetts was heavily deluged with water. The six days of rain produced extensive river floods in the region, which became known as the “Mother’s Day Flood of 2006.” On May 13, 2006, Mr. Breen discovered sewage backing up out of the toilets and drains on the first floor of Route 1 Racquet & Fitness. The next morning, May 14, 2006, the Massachusetts State Police responded to flooding on Route 1 directly in front of 425 Broadway. The State police called tow trucks for motorists with flooded cars, and directed traffic around the flood. State Police Trooper Browning, who was working on the scene that morning, witnessed water one foot deep on Route 1 and water two feet deep in front of425 Broadway. Citing flooding from the overflow of the nearby Saugus River, the Massachusetts Highway Department completely closed Route 1 in the area of425 Broadway at approximately 11:30 p.m. on May 14.
The next morning, police allowed Mr. Breen to inspect his building, where he found 18-20 inches of water located in and around the building. At approximately the same time Mr. Breen was arriving at the building that morning, a state engineering consultant along with the water authorities in Lynn were examining an overflowing municipal dam at the Walden Pond reservoir. The reservoir is located approximately a half of a mile north of the plaintiffs property. Out of concern for the integrity of the dam, authorities opened a flood valve to lower the reservoir and preserve the dam.
After the flooding, the plaintiff submitted an insurance claim for water damage to 425 Broadway through defendant’s representative, Popkin Adjustment Company. On February 2, 2009, Popkin Adjustment rejected the plaintiffs claim and denied all coverage under the insurance policy on behalf of the defendant. *462 On May 14, 2009, the Plaintiff filed this complaint alleging that the defendant’s denial of coverage was a material breach of the insurance contract between the parties.
III. DISCUSSION
Summary judgment is properly granted when there is no genuine issue as to any material fact, and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). A dispute of fact is genuine if the evidence would permit a reasonable fact finder to return a judgment for the non-moving party. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles it to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Although the court views the facts in the light most favorable to the plaintiff as the nonmoving party, Jupin v. Kask, 447 Mass. 141, 143 (2006), it may not defeat the motion merely by resting on the allegations and denials in the pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing there is a genuine issue of fact for trial. Mass.R.Civ.P. 56(e); Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 644 (2002). The court does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
The interpretation of an insurance policy is no different from the interpretation of any other contract and is a question of law for the court. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998), citing Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997). Where the policy language is unambiguous, the court will construe the words of the policy in their usual and ordinary sense. Hakim, 424 Mass, at 280. An insured generally bears the initial burden of proving that a particular claim falls within a policy’s coverage, Markline Co., Inc. v. Travelers Ins. Co., 384 Mass. 139, 140 (1981), while an insurer has the burden of proving the applicability of a particular exclusion. Hanover Ins. Co. v. Talhouni, 413 Mass. 781, 785 (1992). The law is well-settled that exclusions from coverage are to be strictly construed and any ambiguiiy in an exclusion must be construed against the insurer. Hingham Mut. Fire Ins. Co. v. Niagara Fire Ins. Co., 46 Mass.App.Ct. 500, 503 (1999). While exclusions are narrowly construed, “the courts are not free to revise [them] or change the order of the words.” Continental Casualty v. Gilabne Building, 391 Mass. 143, 147 (1984).
The plaintiff procured a policy containing, in pertinent part, the following exclusion:
This policy insures against all risk of direct physical loss or damage from any external cause to the property insured when caused by a peril not excluded . . .
PERILS EXCLUDED:
This policy does not insure against loss or damage caused by, resulting from, contributed to or aggravated by:
(a)(2) flood, meaning surface water, waves tide or tidal water, and the rising (including the overflowing or breaking of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and other similar bodies of water whether driven by water or not;
(b)(1) backing up of sewers or drains due to an occurrence of nature.
Plaintiff asserts that it was the negligent opening of the Walden Pond flood valve that caused the water damage, and consequently the flood exclusion does not apply. The defendant contends that since the damage was caused by flooding, the exclusion in this instance applies regardless of the exact cause.
The plaintiffs line of reasoning amounts to a “concurrent cause” argument that proposes that the opening of the valve was a separate, fortuitous event from the rains that plagued the area over those six days in May of 2006. The plaintiffs insurance policy, however, explicitly contains an anti-concurrent cause provision that stipulates that loss “caused by, resulting from, contributed to or aggravated by flood” will not be covered. This anti-concurrent cause provision, which allows insurers to preclude coverage from damage caused by a mix of covered and excluded perils, is permitted under Massachusetts law. Alton v. Manufacturers & Merchants Mut. Ins. Co., 416 Mass. 611, 613-15 (1993); Moschitto v. Traveler’s Property Casualty, 66 Mass.App.Ct. 1106, *1 (2006) (memorandum and order pursuant to Rule 1:28); see also Preferred Mut Ins. Co. v. Meggision, 53 F.Sup.2d 139, 142 (D.Mass. 1999) (discussing the vast majoriiy of states upholding anti-concurrent clause provisions).
The plain meaning of the language used in the anti-concurrent clause is unambiguous. A combined reading of the coverage and exclusions of the plaintiff s policy demonstrates the intent to exclude loss caused by or resulting from a flood. An objectively reasonable insured reading the policy language would not expect to be covered by loss related to natural flooding. See Massachusetts Prop. Ins. Underwriting Ass’n. v. Wynn, 60 Mass.App.Ct. 824, 828 (2004). The plaintiff himself admitted that when he procured the policy, he was aware it did not include flood coverage.
Instead, plaintiff urges the Court to find that the damage to the property occurred from a separate, fortuitous event; in this instance the deliberate release of a flood valve by the Lynn Water and Sewer Commission. In support of his argument, plaintiff cites cases in which Massachusetts Courts have ruled that events that ended with water damage, but were not explicitly listed in the policy’s flood definition, fell outside the scope of the exclusionary provision. See Mellon v. Hingham Mut. Fire Ins. Co., 19 Mass.App.Ct. 933, 934 *463 (1984) (stating that the exclusionary clause did not apply to water damage from a broken underground pipe); see also McDonough v. Hardware Dealers Mut Fire Ins. Co., 448 F.2d 870, 874 (1st Cir. 1971) (damage from water used to extinguish fire that flows onto adjacent land does not fall under the exclusionary clause).
The damage to the plaintiffs property is distinguishable from the above cases because the water damage in both Mellon and McDonough occurred independently of an excluded peril. See McDonough, 448 F.2d at 874; Mellon, 19 Mass.App.Ct. at 933. The flooding of the property in those instances was separate and distinct from the natural flooding of a surface area. The policy in Mellon, explicitly covered accidental discharge from a plumbing system, and because it was the accidental bursting of a drainage pipe beneath the property that caused the water damage in Mellon, the plaintiff could recover under the policy. Mellon, 19 Mass.App.Ct. at 933. Here, a natural flood preceded and consequently resulted in the deliberate decision to open the flood valve. Even if the opening of the flood valve by the Lynn Water and Sewer Commission increased the flooding of the plaintiffs property, the calculated decision to open the valve was not an accident. Rather, it was deemed a necessary decision caused by and resulting from actual surface flooding, and thus, would not be covered under the policy. The Fifth Circuit Court of Appeals recently made this same distinction, stating that “when the inundation [of water] results from the overflow of a body of water, whether natural or artificial, the event is a flood.” In re Katrina Canal Breaches Litigation, 495 F.3d 191, 217 (5th Cir. 2007) (specifically distinguishing water damage as a result of the overflowing of a dam from water damage caused by a break in a water main).
The actions of the Lynn Water and Sewer Commission do not alter the language of the exclusionary clause nor the obligations under the policy. The release of the flood valve was a purposeful act that the Lynn Water and Sewer Commission deemed a necessary response to the flooding that overtook the region. Simply because Lynn city officials had to make a determination pursuant to their official duties, does not change the fact that the damage to the plaintiffs property was “caused by, and resulted from” flooding throughout eastern Massachusetts.
CONCLUSION
The Motion for Summary Judgment by the defendant, Pacific Life Insurance, is hereby GRANTED.